**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| First Professionals Insurance Company, | |
| Plaintiff, | |
| | Civil Action File |
| v. | |
| | No. _____ |
| Owen, Gleaton, Egan, Jones & Sweeney, LLP, and Amy J. Kolczak, | |
| Defendants. | |

## COMPLAINT FOR LEGAL MALPRACTICE

First Professionals Insurance Company, Inc. ("FPIC") files this Complaint for Legal Malpractice against the law firm of Owen, Gleaton, Egan, Jones & Sweeney, LLP ("Owen Gleaton") and Amy J. Kolczak ("Ms. Kolczak") showing:

### PRELIMINARY STATEMENT

1.     FPIC employed the law firm of Owen Gleaton to defend two of FPIC's Insureds in a medical malpractice action.  The Patients in that case sought damages that far exceeded FPIC's Policy Limits of $2 million, but the Insureds had a strong likelihood of prevailing against the claims based on strong defenses to liability and causation.  The Insureds, however, lost those defenses when the trial court struck their answer as a sanction after finding that Owen Gleaton and Kolczak had violated a court order prohibiting the law firm and Ms. Kolczak from

interviewing the Patients' treating physicians without first notifying their attorney and allowing him to be present.

Having lost the ability to defend against liability or causation, the Insureds could only attempt to challenge the amount of damages, and the Patients had produced evidence showing more than $15 million in damages.  As a result, the Insureds were facing the risk of a judgment that would far exceed the $2 million Policy Limits.  Therefore, when the Patients' attorney sent a time-limited demand to settle the case for the $2 million Policy Limits and the Insureds' attorney sent a similar policy-limits demand, FPIC had a duty to pay that amount to protect its Insureds against the risk of a significant excess judgment.  FPIC is now bringing this action to recover that $2 million payment, as well as the attorneys' fees that Owen Gleaton and Ms. Kolczak charged FPIC for time spent dealing with the fallout from their own malpractice, plus general damages, punitive damages, and the attorneys' fees and litigation expenses for this action.

JURISDICTION, VENUE AND PARTIES

2.     This Court has jurisdiction over this matter under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 exclusive of interest and costs and is between citizens of different states.

3.     Venue is appropriate in this district under 28 U.S.C. § 1391(a).

4.     FPIC is a Florida corporation with its principal place of business at 1000 Riverside Avenue, Suite 800, Jacksonville, Florida 32204, and is authorized to conduct business in the State of Georgia.

5.     Owen Gleaton is a law firm and a Georgia limited-liability partnership with its principal place of business at 1180 Peachtree Street, NE, Suite 3000, Atlanta, Georgia 30309.

6.     Owen Gleaton is subject to the jurisdiction of this Court and may be served with process by delivering the summons and complaint to one of its partners, Frederick N. Gleaton, at Owen Gleaton's offices at 1180 Peachtree Street, NE, Suite 3000, Atlanta, Georgia 30309.

7.     At all times relevant to the allegations in this complaint, Ms. Kolczak was a partner at Owen Gleaton.

8.     At all times relevant to the allegations in this complaint, Ms. Kolczak committed the tortious acts and omissions further described below within the State of Georgia.

9.     Ms. Kolczak is a citizen of Colorado and is subject to the jurisdiction of this Court and may be served with process by delivering the summons and complaint to her at Poudre Valley Health System, 2315 E. Harmony Road, Suite 200, Ft. Collins, Colorado 80528.

10.     At all times relevant to the allegations in this complaint, Ms. Kolczak and an associate attorney working under Ms. Kolczak's direction ("the Associate") were lawyers licensed to practice law in Georgia.

11.     At all times relevant to the allegations in this complaint, Ms. Kolczak and the Associate were Owen Gleaton's agents and employees.

12.     Owen Gleaton is responsible for any acts or omissions by Ms. Kolczak and the Associate alleged in this case under the doctrine of respondeat superior.

## THE ATTORNEY-CLIENT RELATIONSHIP

13.     FPIC is an insurance company that provides medical-malpractice insurance coverage for healthcare professionals.

14.     In March 2010, Michelle Buttacavoli and her child, Nicole Buttacavoli, filed a lawsuit against two of FPIC's Insureds – an obstetrics/gynecology clinic and a certified nurse midwife employed by the clinic.[1]

---

[1] This complaint will use the following references:  (1) "the Mother" for Michelle Buttacavoli, the "the Child" for Nicole Buttacavoli, and "the Patients" for both of them collectively; (2) "the Underlying Action" for the lawsuit that the Patients filed, which is referenced in paragraph 14 of this complaint; and (3) "FPIC's Insureds" or "the Insureds" as a collective reference to both the obstetrics/gynecology clinic and the certified nurse midwife that are referenced in paragraph 14 of this complaint.

15.     The Patients contended that FPIC's Insureds committed malpractice in providing medical services to the Mother while she was pregnant with the Child and that the malpractice caused the Mother to deliver the Child severely prematurely, seriously injuring the Mother and causing devastating, life-long injuries to the Child.

16.     The Patients sought more than $15 million in damages from FPIC's Insureds.

17.     As part of its insurance policy with the Insureds, FPIC was contractually obligated to provide an attorney to defend the Insureds in the Underlying Action and to pay for any judgment entered against the Insureds up to a maximum of $1 million per patient, for a total of $2 million ("the Policy Limits").

18.     The Insureds would be responsible for paying any part of the judgment that exceeded the Policy Limits.

19.     FPIC hired Owen Gleaton to defend FPIC's Insureds in the Underlying Action ("the Engagement").

20.     As a result of the Engagement, an attorney-client relationship was created between Owen Gleaton and FPIC and between Owen Gleaton and FPIC's Insureds.

21.     As a result of the Engagement, an attorney-client relationship was created between Ms. Kolczak and FPIC and between Ms. Kolczak and FPIC's Insureds.

22.     As a result of the Engagement, an attorney-client relationship was created between FPIC and any other attorney employed by Owen Gleaton who assisted in the representation of FPIC's Insureds, including the Associate.

23.     As a result of the Engagement, an attorney-client relationship was created between the Insureds and any other attorney employed by Owen Gleaton who assisted in the representation of the Insureds ("the Other Owen Gleaton Attorneys"), including the Associate.

24.     During the representation, Owen Gleaton, Ms. Kolczak, the Associate, and the Other Owen Gleaton Attorneys had a duty to faithfully, honestly, and consistently represent FPIC's interests and the interests of FPIC's Insureds.

25.     During the representation, Owen Gleaton, Ms. Kolczak, the Associate, and the Other Owen Gleaton Attorneys had a duty to protect and preserve FPIC's rights and the rights of FPIC's Insureds.

26.     During the representation, Owen Gleaton, Ms. Kolczak, the Associate, and the Other Owen Gleaton Attorneys had a duty to give equal consideration to the rights and interests of FPIC and the Insureds.

27.     In carrying out the representation, Owen Gleaton, Ms. Kolczak, the Associate, and the Other Owen Gleaton Attorneys were required to possess and use at least the same degree of care, skill, and diligence as is normally possessed and used by lawyers who represent defendants in similar litigation.

FACTS

A.     The Insureds Had Strong Defenses Against The Patients' Claims.

28.     Although the Patients were seeking damages that far exceeded the Policy Limits, the Insureds had strong defenses to the claims – specifically that the Insureds did not commit malpractice; that the Patients' injuries were caused by a preexisting infection; and that the Insureds could not have done anything to prevent the Patients' injuries.

29.     Gilbert Webb, M.D., was a physician who treated the Patients after they were treated by the Insureds.

30.     In 2007, Dr. Webb reviewed the Patients' medical records at Owen Gleaton's request.

31.     After reviewing the Patients' medical records, Dr. Webb informed Owen Gleaton that he did not have any standard-of-care criticisms of the Insureds and that he believed that the Mother's premature delivery was caused by a

preexisting infection and could not have been prevented, regardless of the course of treatment.

  B. The Law Regarding A Defense Attorney's Right To Have Ex Parte Communications With Dr. Webb As One Of The Patients' Treating Physicians.

  32. On November 3, 2008, the Georgia Supreme Court issued its opinion in *Moreland v. Austin*, 284 Ga. 730, in which it held that under the Health Insurance Portability and Accountability Act (HIPAA), "in order for defense counsel to informally interview [a] plaintiff's treating physicians [regarding protected health information], they must first obtain a valid authorization, or court order or otherwise comply with the provisions of 45 C.F.R. § 164.512(e)" (which is a regulation regarding the discovery of protected health information in the context of litigation).

  33. In an affidavit filed in the Underlying Action, Ms. Kolczak testified that: "When the legal landscape changed in November of 2008, with the Supreme Court's *Moreland* decision, we ceased all attempts at meeting with treating physicians to discuss the care and treatment of the [Patients]."

  C. Owen Gleaton's Ex Parte Communications With Dr. Webb After The *Moreland* Decision.

  34. After *Moreland*, Ms. Kolczak, the Associate, and Owen Gleaton knew that it would violate HIPAA for them to engage in ex parte communications with

Dr. Webb regarding the Patients' protected health information without first

obtaining either the Patients' authorization or a court order, or otherwise

complying with the provisions of 45 C.F.R. § 164.512(e).

35.     On May 27, 2009, in an effort to comply with the *Moreland* decision,

the Associate started drafting a motion seeking the trial court's permission to

engage in ex parte communications with the Patients' treating physicians,

including Dr. Webb ("the Motion for Qualified Protective Order").

36.     The Associate drafted the Motion for Qualified Protective Order at

Ms. Kolczak's direction.

37.     The Associate and Ms. Kolczak continued to work on the Motion for

Qualified Protective Order in June 2009 and filed it on June 22, 2009.

38.     On June 19, 2009, before Owen Gleaton had filed the Motion for

Qualified Protective Order or obtained a ruling on it, the Associate conducted an

ex parte phone interview with Dr. Webb and discussed the Patients' protected

health information ("the Ex Parte Phone Interview").

39.     The Associate conducted the Ex Parte Phone Interview at Ms.

Kolczak's direction.

40.     Ms. Kolczak knew that the Associate conducted the Ex Parte Phone

Interview because Ms. Kolczak reviewed a contemporaneous memo from the

Associate regarding the interview that clearly showed that the Associate had discussed the Patients' protected health information with Dr. Webb.

41.     A true and correct copy of the memo regarding the Ex Parte Phone Interview is attached to this complaint as Exhibit A.

D.     **The Trial Court's Order Regarding Procedures For Communicating With Dr. Webb And Other Treating Physicians.**

42.     On September 23, 2009, the trial court issued an order on the Motion for Qualified Protective Order ("the Qualified Protective Order") that (1) required Owen Gleaton to send written notice to the Patients' attorney that Owen Gleaton intended to interview the Patients' treating physicians "at least 7 days prior to the date of said conference" and (2) gave the Patients the right to attend all such interviews in person and in the presence of their attorney or a member of his staff.

43.     A true and correct copy of the Qualified Protective Order is attached to this complaint as Exhibit B.

E.     **Ms. Kolczak's Ex Parte Meeting With Dr. Webb Before His Deposition.**

44.     After the trial court entered the Qualified Protective Order, the parties scheduled Dr. Webb's deposition for November 19, 2009.

45.     When the Patients' attorney arrived at Dr. Webb's office about 20 minutes before the deposition start time, he discovered that Ms. Kolczak had arrived before him and was in the back of Dr. Webb's medical offices.

46.     During Dr. Webb's deposition, Dr. Webb confirmed that he had a meeting with Ms. Kolczak immediately before his deposition ("the Ex Parte Meeting").

47.     Dr. Webb testified that he spoke to Ms. Kolczak for 10 to 15 minutes during the Ex Parte Meeting and that they spent about half that time "talking about the case."

48.     Dr. Webb also testified that Ms. Kolczak had scheduled the Ex Parte Meeting.

F.     The Patients' Motion For Sanctions.

49.     After Dr. Webb's deposition, the Patients' attorney filed a motion for sanctions, alleging that Ms. Kolczak violated the Qualified Protective Order ("the Motion for Sanctions") by having the Ex Parte Meeting with Dr. Webb without giving the Patients notice or an opportunity to attend.

50.     In response to the Motion for Sanctions, Ms. Kolczak testified by affidavit and at the hearing on the motion:

a)      That she arrived at Dr. Webb's office about 20 minutes before the

deposition start time, told the receptionist that she was there, and sat

down in the waiting room;

b)      That shortly after she sat down, Dr. Webb's office manager took her

back to look at the room where they planned to conduct the deposition

to make sure that it was appropriate;

c)      That, after she finished checking the room and turned to walk back to

the waiting room, she saw Dr. Webb by happenstance coming out of

another room;

d)      That she spoke to Dr. Webb for approximately 15 minutes;

e)      That "half of that time [was] conversation related to this lawsuit" and

the other half was spent "exchanging pleasantries and generally

catching up" because she knew him from several years before;

f)      That she was keenly aware of HIPAA's privacy rules and the

Qualified Protective Order and that she therefore told Dr. Webb

"specifically don't talk to me about the case;"

g)      That she did not "interview" Dr. Webb "as to any topic, including his

medical care and treatment of [the Patients];"

h)     That she did, however, "discuss[] the status of this lawsuit with Dr. Webb, including the allegations against [the Insureds];"

i)     That she was "100% positive" that she did not set up a meeting or interview with Dr. Webb before his deposition and did not ask anyone in her office to do so;

j)     That when she went back with the office manager to check the deposition room, Dr. Webb was not in the room, and she "did not have expectations of where he was within the office" and "assumed that he was there seeing patients since his deposition was scheduled to start shortly."

51.     At the hearing on the Motion for Sanctions, Ms. Kolczak explained that when she put in her affidavit that she "discussed the status of this lawsuit with Dr. Webb, including the allegations against" the Insureds, she meant that Dr. Webb asked her "whether the case was still the same as it had been years prior when he had seen it," and that she told him that it was.

G.     The Trial Court's Ruling On The Motion For Sanctions.

52.     After the hearing, the trial court entered an order on March 17, 2010, finding that Ms. Kolczak violated the Qualified Protective Order and struck the Insureds' answer as a sanction ("the Sanctions Order").

53.     A true and correct copy of the Sanctions Order is attached to this complaint as Exhibit C.

54.     In the Sanctions Order the trial court found that Ms. Kolczak's testimony about what she discussed with Dr. Webb in the Ex Parte Meeting was "not credible."

55.     In reaching that conclusion, the trial court explained that, at the hearing, it took Ms. Kolczak only one minute, at most, to relate what she contended to be the entirety of her questions and answers with Dr. Webb concerning the case.

56.     The trial court found that Ms. Kolczak's one-minute rendition of her questions and answers with Dr. Webb conflicted with her other testimony that she and Dr. Webb spent 7.5 minutes (half of the alleged 15-minute conversation) talking about the case.

57.     The trial court found that Ms. Kolczak's testimony also conflicted with Dr. Webb's testimony about how long they spent talking about the case.

58.     The trial court also found that "[e]ven assuming that the word usage was not quite as economical as Ms. Kolczak urges, her testimony is that only two minutes out of fifteen involved the case before the Court.  This is not credible. There can only be so many pleasantries that can be exchanged in thirteen minutes."

59.     The trial court also found that, even assuming Ms. Kolczak's testimony to be truthful regarding the full extent of what she discussed with Dr. Webb, the meeting turned into an "interview" in violation of the Qualified Protective Order when (according to Ms. Kolczak's testimony) Dr. Webb asked her "whether the case was still the same as it had been years prior when he had seen it," and she told him that it was.

60.     Ms. Kolczak's testimony about the length of the Ex Parte Meeting also conflicts with her own billing records.

61.     Specifically, although she testified that the Ex Parte Meeting lasted no more than 15 minutes, her own billing records show that she billed FPIC for one hour of time for what she described on the bill as a "Pre-deposition preparation meeting with Dr. Webb."

62.     A true and correct copy of the bill showing the time entry for the "Pre-deposition preparation meeting with Dr. Webb" is attached to this complaint as Exhibit D.

63.     And in contrast to Ms. Kolczak's testimony that she was "100% positive" that she did not set up a meeting or interview with Dr. Webb before his deposition and did not ask anyone in her office to do so, Exhibit E to this complaint is a true and correct copy of a letter from her legal assistant to Dr. Webb

dated October 28, 2009, that reads, "[a]s a follow up to my telephone conversation today's date with Beth, this letter will confirm your **pre-deposition meeting** with Amy Kolczak" (emphasis in original) for November 19, 2009, at 3:30 p.m. (30 minutes before the scheduled start time for the deposition).

64.   Dr. Webb also testified that Ms. Kolczak scheduled the meeting.

H.   The Effect Of The Sanctions Order.

65.   Prior to the trial court's Sanctions Order, FPIC's Insureds had a strong likelihood of prevailing against the Patients' claims based on strong defenses to liability and causation.

66.   As a result of the Sanctions Order, FPIC's Insureds could no longer contest the well-pled allegations of the Patients' complaint and were effectively restricted to only contesting the amount of damages claimed by the Patients.

67.   The Patients' alleged damages far exceeded the FPIC Policy Limits because the case involved permanent brain damage to the Child and a severe infection to the Mother's abdominal organs and viscera resulting in significant medical complications, gross internal and external scarring, and substantial pain and suffering.

68.    The Patients' combined medical expenses alone exceeded $1 million, and the Patients had produced a life-care plan that projected $15 million in future expenses related to the Child's permanent injuries.

69.    While Ms. Kolczak and Owen Gleaton were attempting to appeal the Sanctions Order, the Patients submitted a time-limited demand, agreeing to settle the claims against FPIC's Insureds in exchange for a payment by a certain date of the $2 million Policy Limits with FPIC.

70.    The Insureds demanded that FPIC accept the Patients' settlement offer to protect them against a judgment that could substantially exceed the available insurance coverage.

71.    To fulfill its duty to its Insured's interests as well as its own interests and to protect its Insureds against a possible excess verdict that would expose them to personal liability, FPIC paid its Policy Limits of coverage in the amount of $2 million to settle the claims.

COUNT 1

LEGAL MALPRACTICE BY THE ASSOCIATE AND MS. KOLCZAK
REGARDING THE EX PARTE PHONE INTERVIEW

72.    FPIC incorporates the allegations in paragraphs 1 through 41.

73.    The Associate failed to perform legal services for FPIC and its Insureds with the required degree of skill, care, and diligence and thereby

committed legal malpractice by conducting the Ex Parte Phone Interview with

Dr. Webb on June 19, 2009, regarding the Patients' protected health information

when she knew that it would violate HIPAA for her to do so unless Owen Gleaton

first obtained the Patients' authorization or a court order, or otherwise complied

with HIPAA's regulations regarding obtaining protected health information in the

context of litigation.

74.    In fact, at the time the Associate conducted the Ex Parte Phone

Interview, she was still drafting a motion seeking permission to engage in such ex

parte communications with the Patients' treating physicians, but knew that she had

not even filed the motion, much less obtained a ruling from the trial court granting

the permission.

75.    Ms. Kolczak failed to perform legal services for FPIC and its Insureds

with the required degree of skill, care, and diligence and thereby committed legal

malpractice by directing the Associate to conduct the Ex Parte Phone Interview.

76.    The conduct set out in paragraphs 73 – 75 constituted negligence on

the part of the Associate and Ms. Kolczak.

77.    The conduct set out in paragraphs 73 – 75 of this complaint

constituted a breach of contract on the part of the Associate and Ms. Kolczak.  As

required by O.C.G.A. § 9-11-9.1, this count for legal malpractice is properly

supported by the affidavit of Thomas D. Harper, Esquire, which is attached to this complaint as Exhibit F.

COUNT 2

LEGAL MALPRACTICE BY MS. KOLCZAK REGARDING
THE EX PARTE MEETING

78.     FPIC incorporates all allegations in paragraphs 1 through 71.

79.     Ms. Kolczak failed to perform legal services for FPIC and its Insureds with the required degree of skill, care, and diligence and thereby committed legal malpractice in at least the following ways:

a)     Scheduling a predeposition meeting with Dr. Webb after entry of the Qualified Protective Order without notice to the Patients' attorney and without providing the Patients with an opportunity to attend;

b)     Engaging in conduct (the Ex Parte Meeting) that a judge could reasonably interpret as violating the Qualified Protective Order.

80.     The conduct set out in paragraph 79 of this complaint constituted negligence on the part of Ms. Kolczak.

81.     The conduct set out in paragraph 79 of this complaint constituted a breach of contract on the part of Ms. Kolczak.

82.     The conduct set out in paragraph 79 injured FPIC.

83. The injuries to FPIC resulted in special damages of $2 million (for the payment of the Policy Limits) and the litigation expenses that Owen Gleaton charged FPIC to deal with the fallout from Owen Gleaton's own negligence.

84. As required by O.C.G.A. § 9-11-9.1, this count for legal malpractice is properly supported by the affidavit of Thomas D. Harper, Esquire, which is attached to this complaint as Exhibit F.

### COUNT 3

#### LEGAL MALPRACTICE BY MS. KOLCZAK FOR OVERBILLING FOR THE EX PARTE MEETING

85. FPIC incorporates all allegations in paragraphs 1 through 71.

86. Ms. Kolczak failed to perform legal services for FPIC and its Insureds with the required degree of skill, care, and diligence and thereby committed legal malpractice by billing FPIC for one hour of time for a "pre-deposition preparation meeting with Dr. Webb" in the face of her sworn testimony that the meeting lasted no more than 20 minutes.

87. The conduct set out in the preceding paragraph constituted a breach of contract on the part of Ms. Kolczak.

88. That breach of contract injured FPIC.

89.     As required by O.C.G.A. § 9-11-9.1, this count for legal malpractice is properly supported by the affidavit of Thomas D. Harper, Esquire, which is attached to this complaint as Exhibit F.

## COUNT 4

### FRAUD

90.     FPIC incorporates all the allegations in paragraphs 1 through 71 and 86 through 89.

91.     Ms. Kolczak and Owen Gleaton defrauded FPIC by billing FPIC for one hour of time for a "pre-deposition preparation meeting with Dr. Webb" when Ms. Kolczak testified that the meeting lasted no more than 20 minutes.

92.     Believing that charge to be valid, FPIC paid the charge, thereby incurring special damages.

## COUNT 5

### ATTORNEYS' FEES AND LITIGATION EXPENSES UNDER O.C.G.A. § 13-6-11

93.     FPIC incorporates all allegations in all of the preceding paragraphs.

94.     Ms. Kolczak acted in bad faith by engaging in the Ex Parte Meeting while consciously disregarding the serious risk that it would create for FPIC and its Insureds in light of the trial court's Qualified Protective Order.

95.     Ms. Kolczak acted in bad faith by giving untruthful testimony in response to the Motion for Sanctions.

96.    Ms. Kolczak acted in bad faith by intentionally billing FPIC for one hour of time for a "pre-deposition preparation meeting with Dr. Webb" when she testified that the meeting lasted no more than 20 minutes.

97.    As a result, FPIC is entitled to recover its attorneys' fees and litigation expenses incurred in this case under O.C.G.A. § 13-6-11.

COUNT 6

PUNITIVE DAMAGES

98.    FPIC incorporates the allegations contained in all of the preceding paragraphs.

99.    Ms. Kolczak's actions in connection with the Ex Parte Meeting with Dr. Webb showed willful misconduct, an entire want of care, and a conscious indifference to the consequences that her actions would have on FPIC and its Insureds in light of the trial court's Qualified Protective Order.

100.    As a result, FPIC is entitled to an award of punitive damages against Ms. Kolczak and Owen Gleaton under O.C.G.A. § 51-12-5.1.

101.    By billing FPIC for one hour of time for a "pre-deposition preparation meeting with Dr. Webb" when she testified that the meeting lasted no more than 20 minutes, Ms. Kolczak showed willful misconduct and acted with a specific intent to harm FPIC by overcharging FPIC.

102.   As a result, FPIC is entitled to an unlimited award of punitive damages against Ms. Kolczak for that action.

REQUEST FOR RELIEF

FPIC requests that the Court conduct a jury trial and enter judgment for FPIC for:

(1)    Special damages (including the $2 million that FPIC paid to settle the Underlying Action) against Owen Gleaton and Ms. Kolczak in an amount determined by a jury;

(2)    General damages (including nominal damages) against Owen Gleaton and Ms. Kolczak in an amount determined by a jury;

(3)    Disgorgement of all fees that Owen Gleaton received from FPIC as a result of the Engagement;

(4)    Attorneys' fees and litigation expenses incurred in this case under O.C.G.A. § 13-6-11 against Owen Gleaton and Ms. Kolczak in an amount determined by a jury;

(5)    Punitive damages against Owen Gleaton and Ms. Kolczak under O.C.G.A. § 51-12-5.1 in an amount determined by a jury for the actions regarding the Ex Parte Meeting with Dr. Webb;

-23-

(6)     An unlimited award of punitive damages against Ms. Kolczak under

O.C.G.A. § 51-12-5.1 in an amount determined by a jury for

overcharging for the Ex Parte Meeting with Dr. Webb; and

(7)     Any other necessary or appropriate relief.

DEMAND FOR JURY TRIAL

FPIC demands a jury trial.

WEISSMAN, NOWACK, CURRY & WILCO, P.C.

/s/ John G. Nelson
John G. Nelson
Georgia Bar Number 538125
Steven D. Caley
Georgia Bar No. 102866
Attorneys for First Professionals Insurance
Company, Inc.

One Alliance Center, 4th Floor
3500 Lenox Road NE
Atlanta, Georgia 30326
(404) 926-4500 | F 4600
johnnelson@wncwlaw.com
stevecaley@wncwlaw.com

100173769